UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CREAGRI, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>PINNACLIFE INC., LLC,<br><br>      Defendant. | Case No.: 11-cv-06635-LHK-PSG<br><br>**ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO COMPEL PLAINTIFF TO COMPLY WITH PATENT L.R. 3-1**<br><br>**(Re: Docket No. 37)** |

In this patent infringement case, Defendant Pinnaclife Inc. ("Pinnaclife") moves to compel Plaintiff Creagri, Inc. ("Creagri") to supplement its infringement contentions to comply with the specificity requirements under Patent L.R. 3-1. Creagri responds that its contentions are sufficient to meet its burden. The parties appeared for argument on October 16, 2012. Having reviewed the parties' papers and Creagri's infringement contentions and after considering oral arguments, the court GRANTS-IN-PART and DENIES-IN-PART Pinnaclife's motion.

## I.  BACKGROUND

Creagri alleges Pinnaclife's Olivamine10 line of products directly and indirectly infringe numerous claims in two patents: U.S. Patent No. 6,416,808 ("'808 Patent") and U.S. Patent No. 8,216,599 ("'599 Patent"). The '808 Patent claims the composition ratios of olive-derived

polyphenols, while the '599 Patent claims methods of use of those polyphenols. Pinnaclife markets Olivamine10 to its customers as a nutritional supplement to combat inflammation.

On August 15, 2012, as required by Patent L.R. 3-1, Creagri provided Pinnaclife with its infringement contentions. Creagri asserted that Pinnaclife's various Olivamine10 products directly infringe claims 1 through 6 of the '808 Patent, based on ratios of hydroxytyresol to oleuropien and/or hydroxytyresol to tyrosol (all of which are olive-derived chemicals) that fall within the patent's limits. It asserted that Pinnaclife's Olivamine10 capsules directly and indirectly infringe claims 1 through 6, 8, 10 through 14, and 16 of the '599 Patent by advertising that the olive-derived polyphenols in its products aid with inflammation.

Pinnaclife argues that Creagri's infringement contentions fail to "specifically identify the factual bases for its infringement allegations."[1] It seeks to compel Creagri to supplement its disclosures as follows:

(1) For claims 1-6 of the '808 Patent and claims 1-6, 8, and 10-14 of the '599 Patent, specifically identify the factual basis for its contention that the accused products contain the weight ratios of hydroxytyrosol, oleuropein, and tyrosol required by the claims, including disclosure of testing data or other supporting documentation;

(2) For claims 1-6, 8, 10-14, and 16 of the '599 Patent, specifically identify the factual basis for its allegations of direct infringement, including how it contends Pinnaclife performs each step of the claimed method;

(3) For claims 6, 10, and 11 of the '599 Patent, specifically identify the factual basis for its allegations that the accused products meet each additional limitation of the dependent claim;

(4) For claim 16 of the '599 Patent, specifically address and provide a factual basis for any allegation that the accused product contains "substantially purified hydroxytyrosol" and identify the condition the accused product is allegedly used to treat;

(5) For claims 1-6, 8, 10-14, and 16 of the '599 patent, specifically identify the factual basis for its allegations of inducement, including identification of the third party alleged to infringe and reference to all advertising or marketing materials,

---

[1] *See* Docket No. 34 at 2.

2

Case No.: 11-6635 LHK (PSG)
ORDER

     instructions for use, scientific papers, and videos that it contends induce infringement by that third party;

(6) For claims 1-6, 8, 10-14, and 16 of the '599 Patent, specifically identify the factual basis for its allegations of contributory infringement, including identification of third parties directly infringing these claims, what components of the claimed invention are offered for sale, sold or imported within the United States, and how that components are allegedly made or adapted for an infringing use; and

(7) For claims 1-6 of the '808 Patent and claims 1-6, 8, and 10-14 of the '599 Patent, specifically identify the factual basis for its allegations of infringement under the doctrine of equivalents, including an identification of the embodiments of Pinnaclife's products that do not literally meet, but are equivalent to, the limitations of each asserted claim.

Creagri responds that its infringement contentions are sufficiently specific to meet the standard.

## II. LEGAL STANDARDS

The Patent Local Rules of this District provide for a "streamlined mechanism to replace the series of interrogatories that accused infringers would likely have propounded in its absence."[2] These rules "require parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed."[3] They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."[4]

The requirements for disclosure of a patentee's infringement theories are set forth in Patent Local Rule 3-1. Rule 3-1(c) requires a party claiming infringement to provide, in chart format,

---

[2] *FusionArc, Inc. v. Solidus Networks, Inc.*, No. C 06-06770 RMW (RS), 2007 WL 1052900, at *2 (N.D. Cal. Apr. 5, 2007) (quoting *Network Caching Tech., LLC v. Novell Inc.*, No. C-01-2079-VRW, 2002 WL 32126128 (N.D. Cal. Aug. 13, 2002)).

[3] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006); *see also Atmel Corp. v. Info. Storage Devices, Inc.*, C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998).

[4] *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp.2d 558, 560 (E.D. Tex. 2005); *cf. Network Caching Tech.*, 2002 WL 32126128 at *5 (noting that the infringement contention requirement of Patent Local Rule 3-1 are designed to "facilitate discovery").

3
Case No.: 11-6635 LHK (PSG)
ORDER

"where each limitation of each asserted claim is found within each Accused Instrumentality." Rule 3-1(d) requires a party claiming indirect patent infringement to identify:

> [a]ny direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

Rule 3-1(e) requires the party to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality."

These rules do not, as is sometimes misunderstood, "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case."[5] But to the extent appropriate information is reasonably available to it, a patentee must nevertheless disclose the elements in each accused instrumentality that it contends practices each and every limitation of each asserted claim.[6]

### III.   DISCUSSION

Pinnaclife's objections to Creagri's infringement contentions fall into four general categories: (1) Creagri's infringement contentions under the '808 Patent, (2) Creagri's infringement contentions under the '599 Patent, (3) Creagri's indirect infringement contentions, and (4) Creagri's doctrine of equivalents contentions. The court considers each category in turn.

---

[5] *See DCG Sys. v. Checkpoint Tech., LLC*, Case No. 11-cv-03729-PSG, 2012 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012) (quoting *Whipstock Serv., Inc. v. Schlumberger Oilfied Sers.*, No. 6:09-cv-113, 2010 WL 143720, at *1(E.D. Tex. Jan. 8, 2010)).

[6] *Cf. FusionArc*, at *1 (denying motion to strike infringement contentions where "the record demonstrates that [patentee] FusionArc's [infringement contentions] reasonably disclose all of the information it presently possesses"). Where the accused instrumentality includes computer software based upon source code made available to the patentee, the patentee must provide "pinpoint citations" to the code identifying the location of each limitation. *See Big Baboon Corp. v. Dell, Inc.,* 723 F.Supp.2d 1224, 1228 (C.D. Cal. 2010). In at least one instance, this court has gone further, holding that even when no source code has been made available by the defendant, "reverse engineering or its equivalent" may be required for at least one of the accused products to identify where each limitation of each claim is located. *Network Caching, LLC v. Novell, Inc.,* No. C 01-2079 VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13, 2002).

### A. '808 Patent

The '808 Patent covers other ranges for the ratio of chemicals that differ based on the composition of the dietary supplement. Relying and citing to Pinnaclife's advertisements, Creagri asserts throughout its contentions that Olivamine10's "Hydroxytyrosol 7% standardized" ingredient in its various products falls within the patent's ratios and, therefore, infringes:

> Olivamine10 Products contain a weight ratio of hydroxytyrosol to oleuropein of between 5:1 and about 200:1. Olivamine 10 Products contain olive leaf extract. Olive leave extract contains oleuropein. Hydrolysis of oleuropein obtained from olive leaves and fruit results in hydroxytyrosol. Publicly accessible documentation indicates that Olivemaine10 Products are "Hydroxytyrosol 7% standardized." The ratio of hydroxytyrosol, obtained by hydrolysis of oleuropein, to oleuropein is between about 5:1 and about 200:1.[7]

Pinnaclife argues that Creagri's infringement contentions insufficiently specify how the amounts of hydroxytyrosol, tyrosol, and oleuropein that Olivamine10 products contain violate the '808 Patent. It asserts that Creagri's reliance on advertising materials, which do not provide the weight ratios of the chemicals in Olivamine10, fails to provide enough factual support for the contentions. Pinnaclife suggests that Creagri must provide testing data or other facts beyond what it has so far indicated to support its contentions.

Pinnaclife's argument overstates the requirements of Patent L.R. 3-1. Creagri must identify how Pinnaclife's products infringe with as much specificity as possible with the information currently available to it.[8] But it is not obligated at this point to supply evidence to support its infringement theory.[9] Creagri asserts, and Pinnaclife does not dispute, that it relies exclusively on

---

[7] *See* Docket No. 35 Ex. 1 at 5 (internal citations omitted).

[8] *Cf. FusionArc,* 2007 WL 1052900, at *1.

[9] *See Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, Case No. C 11-04100 WHA, 2012 U.S. Dist. LEXIS 52486, at *6-*7 (N.D. Cal. Apr. 13, 2012) ("To fulfill its Rule 3-1 obligation, plaintiff need not provide evidentiary support . . . .").

5
Case No.: 11-6635 LHK (PSG)
ORDER

Pinnaclife's publicly available advertisements and marketing materials for its allegations. Disclosure of the factual bases of its allegations is all that is required at this stage.[10]

Pinnaclife also argues that Creagri failed to meet its obligations because it did not provide contentions for each product, instead grouping the products together in its chart. All of the products Creagri grouped together contain the same hydroxytyrosol product that Creagri alleges infringes the '808 Patent. Creagri specified that the hydroxytyrosol compound was the infringing element of each of the products. Pinnaclife, therefore, has sufficient notice of Creagri's infringement theory for each product.

Creagri's contentions provide sufficient information to Pinnaclife of its theories of infringement. It has identified the Pinnaclife products that contain hydroxytyrosol as those products it alleges are infringing, and it has asserted that the percentage of hydroxytyrosol in the products infringes the ratios protected in its patents. Pinnaclife has enough facts to ascertain Creagri's theory of infringement.

**B.      '599 Patent**

The '599 Patent protects a method of treating certain types of bodily inflammation through the use of hydroxytyrosol, tyrosol, and oleuropein in varying ratios.[11] In its infringement contentions, Creagri asserts that Pinnaclife's Olivamine10 Capsule infringes the '599 Patent because it contains ratios of the olive-derived polyphenols that fall within the patent and is used as a treatment for inflammatory conditions. Pinnaclife argues that Creagri's contentions fail to provide the factual bases for the allegations.

Here, Pinnaclife has at least one point. For example, Creagri alleges that the Olivamine10 Capsule infringes claim 6, which protects the method of treating inflammation "wherein said

---

[10] *See id.* (noting disclosure of the basis for a plaintiff's infringement contention is all that is necessary for Rule 3-1).

[11] *See* Docket No. 35 Ex. 1 at 10-13.

6

Case No.: 11-6635 LHK (PSG)
ORDER

administering further comprises administering a second disease treatment agent."[12] In its contention, Creagri states only that "[t]he Olivamine10 Capsule product literally infringes this Claim for the same reasons as Claim 1 above, and because the administration further comprises administering a second disease treatment agent."[13] It cites to Pinnaclife's website, but the site does not state that the Olivamine10 Capsule is or should be used in conjunction with other treatments.[14] In its papers, Creagri asserts that the other ingredients in the capsules are the "second disease treatment agent." It does not, however, make that contention in its Patent L.R. 3-1(c) table. Creagri merely repeats the language of the '599 Patent to allege that Pinnaclife infringed – it provides no factual allegations of how Pinnaclife employed the method detailed in claim 6. Patent L.R. 3-1 requires more than mere repetition of the claim language.[15] Creagri is obligated to make these contentions more specific.

On the other hand, many of Pinnaclife's other arguments again overstate Creagri's obligations under Patent L.R. 3-1. To illustrate, Pinnaclife asserts that Creagri's contentions "do not provide any factual basis for asserting that Pinnaclife's recommended dosage satisfies the additional limitations of claims 10 and 11." Claim 10 includes the limitation "wherein the agent is administered at a dosage of between about 0.3mg/kg and 1 mg/kg per day" and Claim 11 includes the limitation "wherein the agent is administered at a dosage of about 0.6 mg/kg per day."[16] For Claim 10, Creagri contends, among other things, that:

---

[12] *See id.* 1:21.

[13] *Id.*

[14] *See id.* 2:1.

[15] *Cf. Renesas Tech. Corp. v. Nanya Tech. Corp.*, Case No. C03-05709JF(HRL), 2005 WL 2000926, at *7 (N.D. Cal. Aug. 18, 2005) (noting that because plaintiff had done more than merely parrot the claim language, it was not required to supplement its contentions).

[16] *See id.* 1:23-24.

7
Case No.: 11-6635 LHK (PSG)
ORDER

> The Olivamine10 Capsule product literally infringes this Claim . . . because it is administered to a subject with a dose corresponding to between about 0.3 mg/kg and 1 mg/kg per day. The recommended dosage is two capsules containing a total of 1300 mg of Olivamine10.[17]

Creagri repeats the same assertion for Claim 11.[18] Creagri has provided a specific factual allegation: Pinnaclife's recommended dosage of 1300 mg of Olivamine10 infringes the method described in its '599 Patent. Creagri does not at this time have to prove through evidence that the recommended dosage in fact does infringe its patent. It only has to provide enough information for Pinnaclife to understand its theory of infringement.

Likewise, Creagri contends that the "hydroxytyrosol 7% standardized" ingredient of the Olivamine10 Capsule meets the limitation in claim 16 that the protected product contains "substantially purified hydroxytyrosol or a substantially purified mixture of hydroxytyrosol and oleuropein."[19] Creagri alleges that the ingredient in the Olivamine10 Capsule meets those limitations, which is sufficient notice to Pinnaclife of its theory of infringement. Once again, at this stage, Creagri does not have to prove its allegation.

Pinnaclife's argument that Creagri fails to provide a factual basis for the contention that it infringes the method detailed in claim 1 also has no merit. Creagri's contentions include:

> The Olivamine10 Capsule product is a dietary supplement for use in treating an inflammatory condition in a subject in need of such treatment. *See e.g.* CAI000197-198 and www.pinnaclife.com (where Pinnaclife's webpage states Olivamine10 "Acts as an Anti-Inflammatory" and cites "Bitler") [sic] *See also* CAI001596. Pinnaclife's website and documentation further states that reasons you may need Olivamine10 include the following: "Inflammation is the Root of all Disease. Inflamation is Caused by Cells that die Unnaturally Which is Often Caused by Free Radical Damage" . . . "Some Inflammation Based Diseases are: Cancer, Neurodegenerative Disease, Cardiovascular Disease and Diabetes."[20]

---

[17] *See id.* 1:22.

[18] *See id.* 1:23.

[19] *See id.* 1:29.

[20] *Id.* 1:10.

8

Case No.: 11-6635 LHK (PSG)
ORDER

Creagri also points to "Adobe Acrobat files regarding the use of antioxidants, including hydroxytyrosol, tyrosol, and oleuropein for use in a variety of inflammatory conditions" that are hosted on Pinnaclife's website.[21] Creagri has provided sufficiently specific factual contentions to provide notice to Pinnaclife of its theory of infringement, namely that through Pinnaclife's promotion of the Olivamine10 Capsules for treatment of inflammation it infringes the '599 Patent. At this point, the contentions are sufficient to meet the obligations of Patent L.R. 3-1.

C.  **Indirect and Contributory Infringement Claims**

Pinnaclife complains that the indirect infringement claims within Creagri's infringement contentions do not provide the specificity required by Patent Local Rule 3-1(d). Pinnaclife argues that Creagri must identify both the direct infringers and their acts of direct infringement. It also argues that Creagri fails to specify how it contributorily infringes on the '599 Patent.

Throughout its '599 Patent infringement contentions, Creagri adds boilerplate language alleging Pinnaclife engaged in indirect and contributory infringement, such as "advising others to use the . . . product in an infringing manner; advertising and promoting the use . . . in an infringing manner; and distributing instructions, scientific papers, and videos that guide customers to use the . . . product in an infringing manner."[22] Creagri fails to identify what advertisements and instructions lead to what infringing behavior. Although Creagri is not obligated to identify the third-party infringers,[23] it must still disclose how exactly it believes Pinnaclife indirectly or contributorily infringed on the '599 Patent. Its boilerplate language does not suffice.

---

[21] *See id.* at 1:15.

[22] *See* Docket No. 35 Ex. 1 at 13, 14, 16, 17, 18, 19, 21.

[23] *See Akamai Tech., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1309 (Fed. Cir. 2012).

9

Case No.: 11-6635 LHK (PSG)
ORDER

### D. Doctrine of Equivalents

Pinnaclife argues that Creagri failed to comply with Patent L.R. 3-1(e), which requires it to state "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." In its table, Creagri adds boilerplate language to each of its contentions essentially arguing the alternative that "[t]o the extent [the infringement claimed] is not literally present with the . . . product, this element is met under the doctrine of equivalents."[24]

"The doctrine of equivalents exists to prevent a fraud on the patent" and not "to give a patentee a second shot at proving infringement" if it is not "literally present."[25] Creagri cannot merely add boilerplate language asserting that the doctrine of equivalents has been met as an alternative theory.[26] It must specify in what way Pinnaclife's products infringe under the doctrine of equivalents, or drop the contention altogether, as it suggested it would at the hearing.

### IV. CONCLUSION

Creagri must supplement its contentions regarding indirect and contributory infringement and the doctrine of equivalents. It must also supplement its contentions regarding infringement of claim 6 of the '599 Patent. The rest of Creagri's contentions suffice to provide Pinnaclife with its theories of infringement. Creagri shall serve its amended infringement contentions no later than December 16, 2012.

**IT IS SO ORDERED**.

---

[24] *See, e.g.*, Docket No. 35 Ex. 1 at 5, 6, 7, 8, 13, 14, 15, 21.

[25] *Rambus Inc. v. Hynix Semiconductor Inc.*, Case No. C 05-00334 RMW, 2008 U.S. Dist. LEXIS 123187, at *41 (N.D. Cal. Dec. 29, 2008).

[26] *See id.* ("The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation.").

10
Case No.: 11-6635 LHK (PSG)
ORDER

1  Dated: November 2, 2012

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge