UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CREAGRI, INC., a California corporation, ) | Case No.: 5:11-CV-06635-LHK |
| ) | |
| Plaintiff, ) | |
| ) | ORDER DENYING DEFENDANT'S |
| v. ) | MOTION TO DISMISS |
| ) | |
| PINNACLIFE INC., a Nevada corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff CreAgri, Inc. ("CreAgri") brings this action against Defendant Pinnaclife Inc. ("Pinnaclife") for infringement of U.S. Patent No. 6,416,808 ("the '808 Patent") and U.S. Patent No. 8,216,599 ("the '599 Patent"). *See* ECF No. 50 ("SAC"). Before the Court is Pinnaclife's Motion to Dismiss CreAgri's induced infringement claim. ECF No. 54 ("Mot"). Having reviewed the parties' submissions and the relevant law, the Court DENIES Pinnaclife's Motion to Dismiss.

**I.    FACTUAL BACKGROUND**

CreAgri manufactures and sells products containing olive derived polyphenols intended to promote health. SAC ¶¶ 7-8. The '808 Patent, entitled "Method of Obtaining a Hydroxytyrosol-rich Composition From Vegetation Water," is directed to olive-derived dietary supplements that contain hydroxytyrosol and oleuropein or hydroxytyrosol and tyrosol at certain weight ratios. *See* SAC, Ex. A ("'808 Patent") at 3:43-51. The '599 Patent, entitled "Method for Treatment of Inflammation," discloses methods for treating certain inflammation conditions, with a treatment

1

agent containing substantially purified hydroxytyrosol or a substantially purified mixture of hydroxytyrosol and oleuropein. *See* SAC, Ex. B ("'599 Patent"), Abstract.

The '808 Patent was issued on July 9, 2002. *See* '808 Patent. The '599 Patent, on the other hand, was not issued until July 10, 2012. *See* '599 Patent.

Pinnaclife manufactures a range of health products, including Olivamine10. *See* SAC ¶ 33. Plaintiffs allege that Pinnaclife's products contain an olive plant extract having a weight ratio of hydroxytyrosol to oleuropein within the ratios disclosed in the '808 and '599 Patents. *See id.*; '808 Patent at 3:45-47; '599 Patent at 3:44-47. CreAgri contends that Pinnaclife is therefore liable for infringing the '808 and '599 Patents. *See* SAC ¶¶ 51-77. CreAgri also contends that Pinnaclife is liable for *inducing* infringement of the '599 Patent. *Id*. ¶ 60. Because Pinnaclife is seeking to dismiss CreAgri's induced infringement claim, the Court focuses on CreAgri's allegations supporting this claim.

CreAgri alleges that Pinnaclife induces infringement of the '599 Patent by "actively encourag[ing] customers to practice the method taught in the '599 Patent." *Id.* ¶ 43. Specifically, CreAgri contends that Pinnaclife engages in three activities that induce infringement. First, CreAgri alleges that "Pinnaclife collaborates with the University of Iowa in an ongoing clinical [study] directed towards Progressive Multiple Sclerosis." *Id.* ¶ 21. Second, CreAgri alleges that Pinnaclife maintains a publicly available YouTube channel containing videos that describe and promote Olivamine10 as an effective treatment for inflammatory conditions. *Id.* ¶¶ 27-37; *see also id.* ¶ 31 (alleging that, in one video, Pinnaclife claims that "'there is scientific evidence that suggests that the use of Olivamine10 and its patent pending formulation of key ingredients has the ability to reduce the risk of . . . cardiovascular disease, neurodegenerative disease, liver disease . . . inflammation, arthritis and joint pain.'" (quoting MyPinnaclife, *Pinnaclife – Vice President of Sales*, YouTube (Jan. 31, 2011), www.youtube.com/watch?v=TCz1BTOefA8)). Finally, CreAgri alleges that Pinnaclife induces infringement by maintaining a website that advertises, makes available for sale, and promotes Olivamine10 as a treatment for inflammatory conditions. *Id.* ¶¶ 38-43.

2
11-CV-06635-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Notably, Pinnaclife began its participation in the study and first posted the purportedly infringing videos and website advertisements before the '599 Patent was issued. *See* SAC ¶¶ 22, 28, 38; ECF No. 59 ("Opp'n") at 4. However, CreAgri alleges that these activities continued after the '599 Patent was issued and after CreAgri's lawyer informed Pinnaclife of the existence of the '599 Patent. *See* SAC ¶ 21 (alleging that the University of Iowa study is "ongoing"); *id.* ¶ 27 (alleging that Pinnaclife's YouTube channel is "presently . . . available for viewing"); *id.* ¶ 39 (alleging that CreAgri's website has promoted the use of Olivamine10 to treat inflammation-based neurodegenerative and cardiovascular disease as recently as January 15, 2013 (quoting *id.*, Ex. E)).

CreAgri alleges that the aforementioned facts "establish that Pinnaclife affirmatively intends to actively induce the infringement of the '599 Patent." *Id.* ¶ 44. CreAgri alleges that Pinnaclife "continues to take active steps to market and sell its Olivamine10™ Product, and specifically encourages its customers to infringe the '599 Patent." *Id.* ¶ 69. CreAgri further alleges that Pinnaclife "continues to advertise on its website the Olivamine10™ Product, and advertises [Olivamine10™'s] use in a manner that infringes the '599 Patent." *Id.* ¶ 70.

### A. PROCEDURAL BACKGROUND

On December 23, 2011, CreAgri filed its Complaint. *See* ECF No. 1. CreAgri filed its First Amended Complaint ("FAC") on July 30, 2012, shortly after the issuance of the '599 Patent. ECF No. 23. The FAC added for the first time a claim for infringement of the '599 Patent. *Id.*

Pinnaclife moved to dismiss the infringement claims related to the '599 Patent. ECF No. 27. On January 1, 2013, this Court granted Pinnaclife's Motion to Dismiss CreAgri's indirect infringement claims relating to the '599 Patent. ECF No. 46 at 4, 6. The Court found that CreAgri's indirect infringement claims failed because CreAgri did not allege that: (1) anyone other than Pinnaclife directly infringed the '599 Patent, and (2) any Pinnaclife product necessarily infringed the patent. *Id.* at 5. Moreover, the Court found that CreAgri failed "to provide more specificity regarding the documents alleged to have induced infringement." *Id.* at 6.

On January 1, 2013, CreAgri filed its Second Amended Complaint. *See* SAC. Pinnaclife filed its Answer and Counterclaims on February 5, 2013. ECF No. 55. On the same date, Pinnaclife filed the instant Motion to Dismiss. *See* Mot. Pinnaclife filed its Opposition on

3
11-CV-06635-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

1  February 19, 2013, ECF No. 59 ("Opp'n"), and CreAgri filed its Reply on February 26, 2013, ECF
2  No. 60 ("Reply").

3  **II.    LEGAL STANDARDS**

4  A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief
5  can be granted "tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F.3d 729, 732 (9th
6  Cir. 2001). Under Federal Rule of Civil Procedure 8, a Complaint must "give the defendant fair
7  notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,
8  550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While "'detailed
9  factual allegations'" are not required, a complaint must include sufficient facts to "'state a claim to
10 relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,
11 550 U.S. at 555, 570). "A claim has facial plausibility when the plaintiff pleads factual content that
12 allows the court to draw the reasonable inference that the defendant is liable for the misconduct
13 alleged." *Id.* (citing Twombly, 550 U.S. at 556).

14 The sufficiency of a complaint for direct patent infringement, however, is governed by a
15 different standard. Such a complaint "is to be measured by the specificity required by Form 18" in
16 the Appendix of Forms to the Federal Rules of Civil Procedure. *In re Bill of Lading Transmission*
17 *& Processing Sys. Patent Litig.*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). In this context, the
18 *Twombly* and *Iqbal* standard is "too stringent." *Id.* at 1335. This exception to the specificity
19 requirements of *Twombly* and *Iqbal* applies only to claims of direct patent infringement, not to
20 claims of indirect infringement. *Id.* at 1336-37 ("Form 18 should be strictly construed as
21 measuring only the sufficiency of allegations of direct infringement, and not indirect
22 infringement."). A claim for indirect infringement must instead satisfy the specific requirements
23 articulated in *Twombly* and *Iqbal*. *Id.* For purposes of ruling on a Rule 12(b)(6) motion to dismiss,
24 the Court accepts all allegations of material fact as true and construes the pleadings in the light
25 most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031
26 (9th Cir. 2008).

27
28

## III. DISCUSSION

In the Motion to Dismiss, Pinnaclife contends that CreAgri's claim that Pinnaclife induced infringement of CreAgri's '599 Patent must be dismissed. *See* Mot. at 3-4. For the reasons set forth below, the Court disagrees.

Title 35, Section 271(b) of the United States Code provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "Actively induc[ing] infringement," *id.*, "requires an affirmative act of some kind." *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378 (Fed. Cir. 2001). Moreover, like other forms of indirect patent infringement, in order to state a claim of infringement by inducement, there must be an allegation of direct infringement by another. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004). Furthermore, in order to be liable for induced infringement, the defendant must have "possessed the requisite knowledge or intent to be held vicariously liable." *Id.* at 1273 (citations omitted). Thus, to survive a motion to dismiss, a plaintiff must plead "facts plausibly showing that the [defendant] specifically intended [its] customers to infringe the [patent] and knew that the customers' acts constituted infringement." *In re Bill of Lading*, 681 F.3d at 1339 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)).

Pinnaclife contends that CreAgri has failed to state a claim for induced infringement for two reasons. First, Pinnaclife contends that Pinnaclife cannot be liable for induced infringement based on activities that began before the issuance of the patent. *See* Mot. at 3-5; Reply at 1. Second, Pinnaclife contends that, because Pinnaclife's infringing activities began before the issuance of the '599 Patent, they "plainly do[] not support a reasonable inference of specific intent to induce infringement." *See* Reply at 1. Pinnaclife also contends that CreAgri has failed to allege facts showing Pinnaclife possessed the requisite intent. *See id.* at 3. Pinnaclife's arguments fail.

In the SAC, CreAgri has specifically identified Pinnaclife's website statements, YouTube videos, and a joint Pinnaclife and University of Iowa study which promote and encourage Pinnaclife's customers and study participants to use Pinnaclife's Olivamine10 product in a manner that allegedly infringes the '599 Patent. For example, CreAgri alleges that study participants are being provided "a substantially purified hydroxytyrosol or a substantially purified mixture of

5
11-CV-06635-LHK
ORDER DENYING DEFENDANT'S MOTION TO DISMISS

hydroxytyrosol and oleuropein corresponding to between 0.1 mg/kg body weight and 2000 mg/kg body weight . . . to treat the autoimmune disease of multiple sclerosis." SAC ¶¶ 24-25. The '599 Patent similarly claims a method for treating "inflammatory condition[s]" resulting from, among other things, "autoimmune disease" using "a dosage amount corresponding to between about 0.1 mg/kg body weight and 2000 mg/kg body weight daily of substantially purified hydroxytyrosol or a substantially purified mixture of hydroxytyrosol and oleuropein . . . ." '599 Patent at 20:42-51.

CreAgri also alleges facts showing that Pinnaclife's Olivamine10 product "contains an olive plant extract having a weight ratio of hydroxytyrosol to oleuropein of between 1:1 and 200:1," SAC ¶ 33, and that Pinnaclife promotes this product for the treatment of "'inflammation-based neurodegenerative [and] cardiovascular disease,'" *Id.* ¶ 39 (citation omitted); *see also id.* ¶ 31 (video advocating the use of Olivamine10 to reduce the risk of, *inter alia*, cardiovascular disease, neurodegenerative diseases and inflammation (citation omitted)). The '599 Patent similarly claims a "method of treating a subject having an inflammatory condition" using a "treatment agent comprised of an olive plant extract having a weight ratio of hydroxytyrosol to oleuropein of between about 1:1 and about 200:1 . . . ." '599 Patent at 19:37-20:5.

CreAgri further alleges facts showing that at least one of Pinnaclife's YouTube videos promotes its Olivamine10 product to treat inflammation characterized by high levels of C-Reactive Protein. *See* SAC ¶ 31. The '599 Patent also identifies high levels of C-Reactive Protein as a marker for coronary inflammation. *See* '599 Patent at 19:37-53.

CreAgri alleges that, while Pinnaclife's promotional activities and participation in the studies began before the issuance of the '599 Patent, Pinnaclife's activities continued after Pinnaclife learned of the '599 Patent and that these activities therefore support an inference that Pinnaclife intends to induce infringement. *See id.* ¶¶ 21, 27, 39, 43-44, 68-70. Notably, while Pinnaclife argues that its actions cannot show induced infringement because Pinnaclife's actions began before the '599 Patent was issued, Pinnaclife does not appear to dispute in its Motion to Dismiss that its website statements, YouTube statements, and study encourage users to employ methods that CreAgri alleges infringe the '599 Patent.

With respect to Pinnaclife's arguments in its Motion to Dismiss, the Court is not persuaded that the mere fact that Pinnaclife's infringing activity in this case began before Pinnaclife had knowledge of the '599 Patent is sufficient to insulate Pinnaclife from liability for induced infringement. After learning that the '599 Patent had been issued, Pinnaclife made the *choices* to: (1) continue to advertise its Olivamine10 Product; (2) participate in the study with the University of Iowa; and (3) leave its YouTube video on the internet. *See* SAC ¶¶ 21, 27-43. In choosing to continue its activities, despite having knowledge of the '599 Patent, Pinnaclife is taking an affirmative action to induce infringement of the '599 Patent.

Moreover, as to the issue of intent, in *In re Bill of Lading* the Federal Circuit explained that, where, as here, a party, with knowledge of another party's patent, advertises or promotes its product for use in an infringing manner, this is sufficient to support an inference that the promoting party intended to induce infringement. *See In re Bill of Lading*, 681 F.3d at 1341-42 ("Common sense indicates that advertising that your product can be used in conjunction with dispatch software to improve asset utilization and provide operational efficiency to the less-than-a-load shipping/trucking industry gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method."). The Court is not persuaded that Pinnaclife's activities cannot support an inference of intent simply because the activities began before the '599 Patent was issued. To the extent Pinnaclife continued these activities after the patent was issued, the continued activities reflect an intent to infringe upon the '599 Patent. Indeed, faced with similar allegations, other district courts have allowed claims of induced infringement to proceed. *See Tranxition, Inc. v. Novell, Inc.*, 03:12-CV-01404-HZ, 2013 WL 2318846, at *5 (D. Or. May 27, 2013) (holding that Plaintiff sufficiently pled specific intent to induce infringement where plaintiff alleged that defendant "had knowledge of the . . . patent and, . . . continu[ed]" allegedly infringing activity); *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1066 (N.D. Cal. 2006) (declining to grant summary judgment on an inducement claim to

certain defendants because they "continued to sell" a particular product along with a manual teaching an infringing use after "learn[ing] of the [patent] when Plaintiff filed suit").[1]

Pinnaclife has failed to cite any authority that supports a contrary conclusion. For example, Pinnaclife relies on *National Presto Industries, Inc. v. West Bend Co. ("Presto")*, 76 F.3d 1185, 1196 (Fed. Cir. 1996). *See* Reply at 2. *Presto* is distinguishable. The plaintiff in Presto argued that the defendant, West Bend Co., was liable for inducement because prior to the issuance of the plaintiff's patent, West Bend flooded the market with product that the plaintiff alleged could be used by other parties to infringe Presto's patent. *Id.*, 76 F.3d at 1194. The Federal Circuit rejected this argument, holding that, as a rule, there can be no liability for inducement for actions taken before a "patent has issued . . . ." *Id.* at 1196. Significantly, West Bend's flooding of the market place occurred before the patent was issued. Here, in contrast, Pinnaclife elected to continue the allegedly infringing activities after the issuance of the '599 Patent. This choice to continue the purportedly infringing activities is sufficient, at this stage, to support an inference that Pinnaclife intended to induce its customers to infringe the '599 Patent. Consequently, Pinnaclife's reliance on *Presto* is misplaced.

Thus, for the reasons set forth above, the Court DENIES Pinnaclife's Motion to Dismiss CreAgri's induced infringement claim.[2]

---

[1] The Court notes that, in Pinnaclife's Motion to Dismiss, Pinnaclife states that CreAgri is required to allege "specific knowledge of resulting infringement . . . ." Mot. at 5 (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006)). Pinnaclife's statement would seem to suggest that, in addition to alleging facts showing that Pinnaclife specifically intended to induce customers and study participants to infringe the '599 Patent, CreAgri must allege facts showing that Pinnaclife was actually informed of the "resulting infringement." *Id.* However, *DSU Medical* does not support such a requirement. Rather, *DSU Medical* supports the proposition that the defendant must have "'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Id.*, 471 F.3d at 1306 (citation omitted). Moreover, after *DSU Medical* was decided, the Supreme Court in *Global-Tech* clarified that the requisite knowledge is "knowledge that the induced acts constitute patent infringement." *Id.*, 131 S. Ct. at 2068.

[2] In denying Pinnaclife's Motion to Dismiss, the Court further notes that CreAgri appears to have corrected the deficiencies that this Court identified when it previously dismissed CreAgri's inducement claim, *e.g.* the lack of "specificity regarding the documents alleged to have induced infringement." ECF No. 46 at 6. As set forth *supra*, CreAgri has cured any issues relating to the lack of specificity by identifying documents related to the University of Iowa study, Pinnaclife's promotional YouTube videos, and the marketing materials on Pinnaclife's website. *See* SAC at ¶¶ 21-50; *id.* Exs. C-I. Moreover, CreAgri has established a sufficient factual basis for the Court to make a reasonable inference that Pinnaclife's customers and the participants in the clinical trial have committed direct infringement as a result of Pinaclife's inducement. *See, e.g.*, *id.* at ¶¶ 34-37 (referencing testimonial videos on Pinnaclife's YouTube channel of customers who have used

**IT IS SO ORDERED.**

Dated: July 29, 2013

_____
LUCY H. KOH
United States District Judge

---

Pinnaclife products to treat medical conditions, including swelling and sciatic nerve pain); *id.* ¶ 67 ("Based upon Pinnaclife's specific directions for use of the Olivamine10$^{TM}$ Product, Pinnaclife's customers directly infringe the claims of the '599 Patent"); *id.* ¶¶ 21-23, Ex. C (describing the clinical trial to treat Multiple Sclerosis with, among other supplements, Olivamine10). Pinnaclife does not appear to contend that the SAC is deficient in these respects.